In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-530 CV


____________________



IN RE THE COMMITMENT OF CHRISTOPHER SHAW







On Appeal from the 284th District Court


Montgomery County, Texas


Trial Cause No. 02-01-00392-CV






OPINION


 The State of Texas filed a petition to civilly commit Christopher Shaw as a sexually
violent predator (SVP). See Tex. Health & Safety Code Ann. §§ 841.001 - 841.147
(Vernon 2003). (1) A jury found that Shaw suffers from a behavioral abnormality that makes
him likely to engage in a predatory act of sexual violence. The trial court entered a final
judgment and order of civil commitment from which Shaw appeals. Shaw raises five issues.

 In his first issue, Shaw contends the Texas SVP statutory scheme is unconstitutional
because it is punitive in nature and violates basic constitutional safeguards. Shaw relies
on the factors set out in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9
L.Ed.2d 644 (1963). We have considered and rejected similar complaints before. See
Beasley v. Molett, 95 S.W.3d 590, 607-08 (Tex. App.--Beaumont 2002, pet. filed); In re
the Commitment of Mullens, 92 S.W.3d 881, 883-84 (Tex. App.--Beaumont 2002, pet.
filed). 

 In Beasley, the appellant maintained Chapter 841 is punitive because a violation of
the terms of commitment is a third degree felony and a predator . . . who is unable to
control his behavior, is condemned to failure. See § 841.085; Beasley, 95 S.W.3d at 608. 
We rejected this argument. Id. "[R]ather than promoting permanent incarceration of sex
offenders, the Act on its face maintains the offenders in the community while imposing on
the persons certain requirements to minimize -- for the benefit of both the offenders and
the public -- the opportunity for the offenders to commit new offenses after commitment." 
Id. Society, through its elected representatives in the Legislature, may impose restrictions
on a civilly committed person's conduct and provide for enforcement of the commitment
order, without the civil commitment itself being considered punitive in nature. 

 Similarly, the appellant in Mullens argued the Act was unconstitutional because
section 841.085 serves a punitive function. Mullens, 92 S.W.3d at 884. We said in
Mullens that section 841.085 "serves the goals of protection of society from future
dangerous behavior and of supervision of persons being treated on an outpatient basis. The
possible criminal penalty which may be imposed for a violation of a judge's order does not
render the entire Act punitive in nature." Id. at 884. We concluded then, as we do now,
that the Legislature can use the possibility of criminal sanctions to enforce the trial court's
commitment order without making the purpose of civil commitment punitive. The
appellant in Mullens also argued that section 841.085 punishes the person for prior
criminal conduct. We said in Mullens that section 841.085 "deals only with violations of
the requirements in the commitment order, not any prior criminal conduct." Id. Shaw's
arguments fail for the same reasons stated in Mullens and Beasley.

 More recently, in In re Martinez, 98 S.W.3d 373, 375 (Tex. App.--Beaumont 2003,
pet. filed), we again rejected a challenge that the Act was unconstitutional as punitive in
nature. There we also rejected an argument that the Act was punitive as applied to
Martinez. We stated:

 His issue presupposes a violation of a specific condition of the commitment
order. The record reveals no violation. When an issue depends on
contingent or hypothetical facts, or upon events that have not occurred, the
issue is not ripe for review.


We cited Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc., 971
S.W.2d 439, 443 (Tex. 1998). Id. We repeat this observation by reproducing an extended
portion of the Patterson opinion setting out and examining the doctrine of ripeness as it
exists in Texas:

 Ripeness, like standing, is a threshold issue that implicates subject matter
jurisdiction, Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.
1998), and like standing, emphasizes the need for a concrete injury for a
justiciable claim to be presented. . . . But if standing focuses on the question
of who may bring an action, see Barshop v. Medina County Underground
Water Conservation Dist., 925 S.W.2d 618, 626-27 (Tex. 1996), ripeness
examines when that action may be brought. At the time a lawsuit is filed,
ripeness asks whether the facts have developed sufficiently so that an injury
has occurred or is likely to occur, rather than being contingent or remote. .
. . Ripeness thus focuses on whether the case involves "uncertain or
contingent future events that may not occur as anticipated, or indeed may not
occur at all." [13A] Wright [et al., Federal Practice and Procedure],
§ 3532.1, at 130 [2d ed. 1984)]. 


Patterson, 971 S.W.2d at 442-43 (selected citations omitted). 


 The record before us also entirely lacks evidentiary support showing "that an injury
has occurred or is likely to occur, rather than being contingent or remote." Id. at 442. 
To the extent Shaw argues the Act is unconstitutional as applied to him, again, as in
Martinez, no violation appears in the record.

 Shaw further contends that the requirement of a tracking device in section
841.082(5) serves both a punitive and deterrent function. Citing a Court of Criminal
Appeals case which holds that electronic monitoring is an unreasonable condition of
deferred adjudication probation, Shaw argues that if electronic monitoring is too harsh a
punishment for a probationer who has not been convicted of a crime, how much more
punitive must it be for someone who is civilly committed? See Ex parte Gingell, 842
S.W.2d 284, 285 (Tex. Crim. App. 1992). As we noted in Beasley, the "restraints [in
section 841.082] in the context of involuntary civil commitments have historically been
treated as civil, not punitive." 95 S.W.3d at 607 (citing Kansas v. Hendricks, 521 U.S.
346, 363, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)). Further, as pointed out in
Hendricks, the "State may take measures to restrict the freedom of the dangerously
mentally ill. This is a legitimate nonpunitive governmental objective and has been
historically so regarded." Hendricks, 521 U.S. at 363. Even though the person committed
under the Kansas statute is subject to in-patient confinement, the Supreme Court found the
statute non-punitive. Id. Here, the person civilly committed is treated on an out-patient
basis and monitored by a tracking device that will "track his location." See §§
841.002(10), 841.082(a)(5). The employment of the device to track the whereabouts of
a sexually violent predator who is on out-patient treatment satisfies a legitimate nonpunitive 
government objective of protecting society from what the Legislature has termed "the risk
of repeated predatory behavior." See § 841.001. Issue one is overruled.

 Issue two complains that due process was violated when the trial court refused to
submit the issue of volitional control to the jury. The record reflects that Shaw requested
the following question be submitted to the jury: "Do you find beyond a reasonable doubt
that Christopher Shaw has a behavior abnormality that makes him likely to reoffend?" (2) 
Shaw's proposed question was to be in addition to the question submitted by the trial court
which read: "Do you find beyond a reasonable doubt that CHRISTOPHER SHAW
suffers from a behavioral abnormality that makes him likely to engage in a predatory act
of sexual violence?" 

 The trial court also provided the jury with two definitions to which no objections
were made. They read as follows: 

 "BEHAVIORAL ABNORMALITY," means a congenital or acquired
condition that, by affecting a person's emotional or volitional capacity,
predisposes the person to commit a sexually violent offense, to the extent
that the person becomes a menace to the health and safety of another person.


 "PREDATORY ACT," means an act that is committed for the purpose of
victimization and that is directed toward:

 (A) a stranger;

 (B) a person of casual acquaintance with whom no substantial
relationship exists; or

 (C) a person with whom a relationship has been established or
promoted for the purpose of victimization. 


These definitions are taken directly from § 841.002(2) & (5) of the Texas SVP act.

 Shaw relies on Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856
(2002), in which the Supreme Court held "there must be proof of serious difficulty in
controlling behavior" before a court can civilly commit a sexually violent predator. Id.
at 413. We believe the definitions provided by the court adequately presented the Crane
issue to the jury and thus satisfied the requirement of due process. In re Commitment of
Almaguer, No. 09-02-172 CV, slip op. at _____, 2003 WL _________ (Tex. App.--Beaumont Sept. 25, 2003, no pet. h.). Issue two is overruled. 

 Issue three contends that Chapter 841 of the Texas Health and Safety Code is
unconstitutionally vague and violates the separation of powers doctrine. We have
addressed and rejected similar complaints in our prior cases. See Beasley, 95 S.W.3d at
608-09; Mullens, 92 S.W.3d at 887-88. Additionally, in the instant case, we rely on our
discussion of the ripeness doctrine in overruling this issue. Shaw's argument in his brief
essentially attacks the potential application of the Texas SVP act via speculation and
criticism of the "delegat[ion] [of] responsibility" to the various supervisory bodies
described in the act. This is also the basis for Shaw's separation of powers complaint. We
reiterate our observation from issue one that we must leave room for the administrative and
supervisory bodies involved with the Texas SVP act to promulgate whatever procedures
they see fit. These bodies must be permitted to "perform their functions unimpeded." 
Patterson, 971 S.W.2d at 443. Issue three is overruled.

 Shaw's fourth issue avers a violation of his Fifth Amendment privilege against self-incrimination occurred when evidence of his interview with two doctors was admitted at
trial. The State replies that Shaw failed to raise such objection at trial prior to the
testimony of either Dr. Sharon Rogers or Dr. Rahn Bailey. Shaw's "Reply Brief" virtually
concedes the State's procedural default response. We do not agree with Shaw that this
issue may be raised for the first time on appeal because it "presents a question of
constitutional magnitude." Because Shaw failed to raise his Fifth Amendment violation
objection at trial, he failed to preserve the issue for appellate review. Tex. R. App. P.
33.1(a)(1)(A). Issue four is overruled.

 Shaw's final appellate issue again presents us with application of the ripeness
doctrine. He contends that § 841.085, the "Criminal Penalty" section, and the terms of
the final judgment entered by the trial court violate his Fifth Amendment privilege against
self-incrimination in that the final judgment of commitment orders Shaw to submit to
polygraph examinations as a requirement of civil commitment. Contained within the
"Final Judgment and Order of Civil Commitment" is commitment requirement 9(a), which
requires Shaw to "submit to periodic monitoring with a polygraph . . . as directed by the
case manager[.]" 

 Once again, Shaw presents us with a "parade of horrors" in his brief as to what
could result from his refusal to comply with the trial court's order to submit to a polygraph
procedure. We again can only respond that such injuries are merely contingent and have
not occurred. We observe without deciding that should Shaw face some sort of civil
"discipline" based upon results of a polygraph procedure, he may have recourse to invoke
the provisions of Tex. R. Evid. 510, as well as other provisions contained under Article
V of said rules. With regard to any subsequent criminal prosecution which may result
from responses provided by Shaw during the court-ordered polygraph procedure, we refer
him to the observations contained in Allen v. Illinois, 478 U.S. 364, 106 S.Ct. 2988, 92
L.Ed.2d 296 (1986) (U.S. Supreme Court recognized Illinois Supreme Court holding,
under Illinois sexually dangerous offender statute, that an individual's statements to a
psychiatrist in a compulsory examination under said statute could not be used against him
in any subsequent criminal proceedings). We do not mean to imply or infer the
applicability of either Allen or the privileges contained in the Rules of Evidence to any
subsequent appeal involving the Texas SVP act. We analyze and decide appeals based
upon the record before us and the arguments made by counsel. As for Shaw's complaint
under issue five, we again hold that it is not ripe for consideration, and we rely on the
authorities and discussion set-out in issue one. Issue five is dismissed. 

 Having disposed of all of Shaw's appellate issues, we affirm the judgment and order
of civil commitment entered by the trial court.

 AFFIRMED.


 ______________________________

 STEVE MCKEITHEN

 Chief Justice

Submitted on June 19, 2003

Opinion Delivered September 25, 2003

Before McKeithen, C.J., Burgess and Gaultney, JJ.


DISSENTING OPINION


 I respectfully dissent to the resolution of issue two. See In re Commitment of
Almaguer, No. 09-02-00172 CV, slip op. at _____ , 2003 WL ______ (Tex. App.--Beaumont Sept. 25, 2003, no pet. h.)(Burgess, J. dissenting).




 DON BURGESS

 Justice

Dissent Delivered

September 25, 2003
1. All statutory references are to the current version of the Texas Health and Safety
Code unless otherwise indicated.
2. This wording is contained in Shaw's written proposed instruction as required to be
submitted by Tex. R. Civ. P. 278. Said written proposed instruction must also be
substantially correct. Id. During the charge conference, however, Shaw's counsel read
the following proposed question into the record: "[D]o you find beyond a reasonable doubt
that Christopher Shaw has serious difficulty in controlling his behavior that would make
him likely to reoffend in a sexual manner[?]" The trial court orally refused said requested
instruction and permitted Shaw to fax his written request to the trial court at a later time. 
Opposing counsel representing the State agreed to this process and agreed that it preserved
Shaw's error for appellate review purposes. We will address this issue based upon the
language contained in the written proposed question, not the orally proposed question.