

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00069-CV
_____

CARLTON ANDRESS, APPELLANT

V.

PARKER COUNTY BAIL BOND BOARD, APPELLEE

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV-12-0224, Honorable Craig Towson, Presiding

March 11, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, J.J.

Carlton Andress appealed from a final judgment denying him declaratory relief. He had sued the Parker County Bail Bond Board (Board) for, among other things, a declaration that Rules 29(C) and 39 implemented by the Board were "beyond [its] . . . regulatory powers" and, therefore unenforceable. Rule 29(C) provided that "[n]o bail bondsman may employ a person as an agent who is not licensed." Rule 39 provided that one who is an agent for a licensed bondsman "may be added as an agent for another company (period not to exceed 45 days or the next monthly Bail Bond Board meeting, whichever comes first) without the approval of the Board"; however, to remain

an agent, "application and fee must be submitted to the Board for approval." Both parties moved for summary judgment, and that of the Board was granted. Consequently, the trial court ordered that Andress "take nothing."[1] On appeal, Andress argues that the trial court erred because the Board could not require an employee of a licensed bondsman to also be a licensed bondsman. Such a requirement purportedly exceeded its authority. We reverse the judgment of the trial court and dismiss for want of jurisdiction.[2]

An appellate court may address, *sua sponte*, the existence of subject matter jurisdiction over a purported controversy. Indeed, it has the duty to do so. *See Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993).

Encompassed within the umbrella of subject matter jurisdiction are the elements of justiciability or ripeness and standing. *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998); *accord Robinson v. Parker,* 353 S.W.3d 753, 755 (Tex. 2011) (stating that ripeness is a threshold issue that implicates subject matter jurisdiction). The former requires the existence of a "concrete injury"; that is, the facts must show an "'injury has occurred or is likely to occur, rather than being contingent or remote.'" *Robinson v. Parker*, 353 S.W.3d at 755, *quoting Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849 (Tex. 2000). Or, as explained by our Supreme Court in *Patterson*, the doctrine "focuses on whether the case involves 'uncertain or contingent future events

---

[1] In its judgment, the trial court also found that "Rules 29(C) and 39 of the Parker County Bail Bond Board are enforceable by the Parker County Bail Bond Board," and that "[t]he Parker County Bail Bond Board may impose the qualification that agents, employees and the like be of good moral character."

[2] The record indicates that the Board moved the trial court to dismiss the proceeding due to the absence of jurisdiction. Upon reviewing the record, we were unable to determine whether the trial court considered the motion and opted to deny it. Our review of the record raised concerns about the existence of subject matter jurisdiction. We directed the parties, via letter dated February 2, 2015, to illustrate why Andress had standing to initiate suit and why the dispute presented a matter ripe for adjudication. Both parties complied with the directive.

that may not occur as anticipated, or indeed may not occur at all.'" *Patterson v. Planned Parenthood*, 971 S.W.2d at 442, *quoting* 13A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3532 (2d ed. 1984). Where the purported injury underlying suit is dependent upon the occurrence of such uncertain or contingent events, then the dispute is not ripe.[3] *Waco Independent School Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000). Adjudicating it results in the rendition of an advisory opinion. *Robinson v. Parker*, 353 S.W.3d at 756; *Patterson v. Planned Parenthood,* 971 S.W.2d at 444 (stating that "'[t]he essence of the ripeness doctrine is to avoid premature adjudication . . . [and] to hold otherwise would be the essence of an advisory opinion, advising what the law would be on a hypothetical set of facts'"). Our rendering such an opinion is something a court cannot do. *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 163-64 (Tex. 2004). Finally, the requirement that a claim be justiciable or ripe applies to declaratory actions. *Id.*

As previously alluded to, Andress sued for declaratory judgment invalidating several rules implemented by the Board. Those rules allegedly required agents of licensed bondsmen to also be licensed. Allegedly, Andress was such an agent of Hoppy's Bail Bond and sought to also become one of KWIK Bail Bonds. Via an alleged informal communication between KWIK's owner and a member of the Board, the former was told that the Board would not license Andress because he purportedly lied "to us." When told of Andress' current employment with Hoppy's, the board member allegedly replied that Andress' employment with that entity would be "revoked."

---

[3] Though a claim is not required to be ripe when suit is filed, the case must be dismissed if the complainant "cannot demonstrate a reasonable likelihood that the claim will soon ripen." *Robinson v. Parker,* 353 S.W.3d 753, 755 (Tex. 2011).

At the time the foregoing verbal exchange occurred, Andress had not changed his employment or filed an application with or otherwise sought approval from the Board to work for KWIK. Nor does the record disclose that he had applied for a license.[4] Similarly missing are allegations that the board member who spoke had the authority to 1) do so on behalf of the Board and its members or 2) in any way bind the Board or its members.[5] *See In re E.M.,* No. 02-14-00403-CV, 2015 Tex. App. LEXIS 167, at *3-4 (Tex. App.—Dallas January 9, 2015, orig. proceeding) (refusing to hold the judge's statement of what he would do in a future proceeding as rendering his comment "ripe" for address via mandamus). While a board member may opine about futuristic actions of a board should it ever meet, what that board will actually adopt remains conjecture.

And, as of the date of this opinion and despite the parties being afforded the opportunity to address the situation, neither pleadings nor any other item of record indicates that 1) KWIK employed Andress, 2) Andress petitioned the Board for leave to be employed by KWIK, 3) Andress petitioned the Board for a license, 4) the Board "revoked" Andress' authority to work for Hoppy, or 5) the Board ever fully convened to address Andress' licensure or status as an agent of either Hoppy or KWIK.

---

[4] That the board member said Andress' ability to continue working with Hoppy Bail Bonds would be "revoked" could lead one to suspect that the Board had previously approved or licensed him to be an agent. Logically, one cannot "revoke" a decision that has not been made or happened. Yet, if the Board had previously granted Andress a license enabling him to act as an agent for Hoppy, one is also left wondering why he needed another to work for KWIK. These questions go unaddressed by the parties. In effect, we do not know if Andress had or has a license, if the Board approved of Andress working for Hoppy, if Hoppy employed Andress before the rules at issue were enacted (and Andress was somehow "grand-fathered" in), or (assuming Andress had no license) the Board excused Andress from the license requirement to work for Hoppy. And, if the latter circumstance is true, that suggests the rules or Board do not require an agent to obtain a license in all circumstances.

[5] To accept that the board member's unilateral utterances were in any way authoritative or binding would suggest that the Board would violate the Open Meetings Act. Given that the entity is governmental in nature, it would be obligated to abide by that Act. *Willman v. City of San Antonio*, 123 S.W.3d 469, 473 (Tex. App. – San Antonio 2003, pet. denied). One of the Act's prohibitions concerns the rendition of final decisions outside of a duly noticed open meeting. *See* TEX. GOV'T CODE ANN. § 551.002 (West 2012). One board member speaking to a citizen who called him is not a duly noticed open meeting; thus, his opinions regarding potential actions of the Board could not bind the Board or its members to follow those opinions.

Simply put, what we have before us is a complaint based upon uncertain or contingent future events which may not occur as anticipated or at all. KWIK may or may not employ Andress as an agent. Andress may or may not seek a license. Andress may or may not already have a license, given his employment with Hoppy. The Board may or may not lawfully convene and require Andress to have a license or somehow "revoke" his authority to work for Hoppy.

A sister court has cautioned that "'[i]n the administrative-law context . . . avoiding premature litigation over administrative determinations prevents courts from 'entangling themselves in abstract disagreements over administrative policies' while simultaneously allowing the agency to perform its functions unimpeded.'" *Bridgeport Indep. Sch. Dist. v. Williams,* 447 S.W.3d 911, 917 (Tex. App.—Austin 2014, no pet.), *quoting Trinity Settlement Servs., LLC v. Texas State Sec. Bd.*, 417 S.W.3d 494 (Tex. App.—Austin 2013, pet. denied). The dispute before us falls within that ambit. The record fails to illustrate that from the time suit was filed, it was nothing more than an abstract disagreement over an administrative policy. Consequently, it does and did not present a controversy ripe for disposition. We have no jurisdiction to entertain it. Nor did the trial court. Nonetheless, we do have the power to render the decision that the trial court should have rendered. TEX. R. APP. P. 43.2(c). Because the trial court should have granted the Board's motion to dismiss the suit for want of subject matter jurisdiction, we reverse the judgment of the trial court and dismiss the suit, without prejudice, for want of jurisdiction.


Brian Quinn
Chief Justice


5