# Supreme Court of Texas

No. 22-0008

Greg Abbott, in His Official Capacity as Governor of the State of Texas; John Scott, in His Official Capacity as Secretary of State of Texas; and the State of Texas,

*Appellants*,

v.

Mexican American Legislative Caucus, Texas House of Representatives; Roland Gutierrez; Sarah Eckhardt; Ruben Cortez, Jr.; and Tejano Democrats,

*Appellees*

On Direct Appeal from the
250th District Court of Travis County, Texas

CHIEF JUSTICE HECHT, joined by Justice Boyd and Justice Blacklock, dissenting.

Plaintiffs sued the State[1] to declare 2021 laws reapportioning Texas House and Senate districts—HB 1[2] and SB 4[3]—unconstitutional

---

[1] I refer to the defendants collectively as the State.

[2] Act of Oct. 15, 2021, 87th Leg., 3d C.S., ch. 1, 2021 Tex. Gen. Laws ___.

[3] Act of Oct. 15, 2021, 87th Leg., 3d C.S., ch. 5, 2021 Tex. Gen. Laws ___.

and to enjoin elections under them. The State appeals the district court's refusal to dismiss the claims for want of jurisdiction.

The district court has not yet reached the merits of plaintiffs' claims, and now plaintiffs tell us that with the 2022 primary-election process complete, and the general election less than five months away, "no one asks this Court to disturb the current election cycle". Plaintiffs speculate that their challenges might affect the 2024 elections, but further reapportionment before then is virtually certain, and there is no way of knowing whether plaintiffs' claims will survive. Plaintiffs' claims for the 2022 election cycle are moot, and for the 2024 cycle, they are not yet ripe and may never even germinate.

At this point, plaintiffs' claims of injury are completely hypothetical, making the Court's decision on their merits advisory and in violation of the Separation of Powers.[4] Any violation of the Separation of Powers is serious, but today's is especially so. In another reapportionment case, the Court observed that "[t]he responsibility for apportioning the State into legislative districts belongs primarily to the Legislature."[5] While courts are obliged to hold the Legislature to its constitutional obligations, "a court's duty to consider a party's constitutional challenge to a statute, never to be taken lightly, and the

---

[4] *See Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) ("The constitutional roots of justiciability doctrines such as ripeness, as well as standing and mootness, lie in the prohibition on advisory opinions, which in turn stems from the separation of powers doctrine." (citing TEX. CONST. art. II, § 1)).

[5] *Terrazas v. Ramirez*, 829 S.W.2d 712, 717 (Tex. 1991) (citing TEX. CONST. art. III, § 28).

2

deference owed a coordinate branch of government, are rarely more sensitive or serious matters than when the statute attacked involves the highly politically charged subject of apportionment."[6] The Court would do well to follow its own advice.

To make matters worse, the Court's opinion largely resolves the merits of the parties' constitutional arguments even after the Court concludes that no plaintiff has standing. The Court says it must address the merits in order to decide whether to dismiss or remand the case. But it cites no authority for the proposition that a plaintiff who lacks standing is nevertheless entitled to a precedential opinion of this Court resolving the merits of plaintiffs' claim. Whether such a judicial maneuver might be justified in some cases is not a question we must answer here. But surely in redistricting litigation—where the deference owed a coordinate branch of government is of unparalleled sensitivity and seriousness—the Court should pause before giving plaintiffs *who lack standing* exactly what they sued to obtain: an opinion of this Court siding with their interpretation of a vigorously disputed and long-debated constitutional provision. The alternative—requiring proper plaintiffs to properly plead their case against the proper defendants before passing judgment on the merits of their claims—may take longer, but it ensures the judicial power has been properly invoked before this Court resolves legal questions of such great weight. And plaintiffs up against the clock are always free to seek expedition of their cases, either in the district court or in this Court by mandamus.

---

[6] *Id.*

I would not decide the weighty issues the parties have raised until there is some real possibility that our decision will actually affect an election. I respectfully dissent.

## I

Plaintiffs contend that maps reapportioning Texas House and Senate districts in response to the U.S. decennial census released in September 2021 are unconstitutional because they were enacted in a special session of the 87th Legislature, not in the regular session[7] and because only one of three House districts containing portions of Cameron County is wholly contained within the County.[8] The 2022 election cycle is in full swing. Primaries and runoffs are over, and the two major parties' candidates for the November general election have been selected. Any significant change in district boundaries at this point, if even possible, would cause massive upheaval in the process.

Plaintiffs tell us that "no one asks this Court to disturb the current election cycle at this point in the litigation and in light of the Court's opinion in *In re Khanoyan*". There we held that "for a court to resolve an election dispute, the court must receive the case early enough to order relief that would not disrupt the larger election."[9] The restraint

---

[7] *See* TEX. CONST. art. III, § 28 ("The Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts . . . .").

[8] *Id.* art. III, § 26 ("[W]hen any one county has more than sufficient population to be entitled to one or more representatives, such representative or representatives shall be apportioned to such county, and for any surplus of population it may be joined in a Representative District with any other contiguous county or counties.").

[9] 637 S.W.3d 762, 764 (Tex. 2022).

4

in *Khanoyan* was not jurisdictional but prudential. The claims were justiciable, and the Court had power to intervene in the election but declined to exercise that power, lest the judicial relief do more harm than good. But the impediments to resolving plaintiffs' claims in this case are jurisdictional, not prudential.

Plaintiffs urge the Court to go ahead and resolve their weighty constitutional challenges—and the State's equally weighty constitutional standing and immunity challenges—in the off-chance the same maps will be used in the 2024 election cycle, which begins with candidate filings in November 2023. Further redistricting before the 2024 elections is all but certain—by the 88th Legislature, or, if that fails, by the Legislative Redistricting Board,[10] or, if that fails, by court order.[11] However it occurs, even if the result is only that the present maps are reaffirmed for use in 2024, the process will moot plaintiffs' regular-session claim. Whether the Legislature will retain the present maps' districts in Cameron County, giving rise to a county-line claim, is entirely speculative and thus not ripe for adjudication now. Our view of that issue at this point is entirely advisory. Plaintiffs concede as much, telling the Court that "a determination that the current boundaries violate the constitutional county line rule would guide the legislature in

---

[10] *See* TEX. CONST. art. III, § 28 ("In the event the Legislature shall at any such first regular session following the publication of a United States decennial census, fail to make such apportionment, same shall be done by the Legislative Redistricting Board of Texas . . . .").

[11] *See id.* ("The Supreme Court of Texas shall have jurisdiction to compel [the] Board to perform its duties . . . ."); *Khanoyan*, 637 S.W.3d at 764 ("A party with . . . a [concrete and justiciable] dispute certainly has access to judicial resolution.").

adopting new, constitutional boundaries during its next regular session rather than sending the maps to the judiciary to be redrawn." The Court's proper role among the branches is not to guide the Legislature in making future decisions, especially on the politically ultrasensitive matter of reapportionment. Had plaintiffs sued before the present maps were drawn in anticipation that the 87th Legislature *might* district Cameron County in violation of plaintiffs' view of the constitution, we would have dismissed their challenge as unripe. The result should be the same for a claim based on what the 88th Legislature might do with maps that are not binding on it.

The unavailability of relief for the 2022 election cycle is certainly not of plaintiffs' making, or anyone else's for that matter. The pandemic delayed the U.S. Census Bureau's release of its decennial census until September 16, 2021—months after the 87th Legislature's regular session had ended. As expected, the release showed population shifts throughout the state that required immediate reapportionment of legislative districts in order to meet federal constitutional requirements for the 2022 elections. In anticipation of the release, the Governor called a special session on September 7 to commence September 20. The Legislature passed HB 1 and SB 4 on October 15. The filing period for the 2022 primary election opened November 13 and closed December 13. In November, MALC sued the Governor and Secretary of State to challenge the new maps, and the Gutierrez plaintiffs filed a companion case against the State. A three-judge court[12] appointed November 18

---

[12] *See* TEX. GOV'T CODE § 22A.001(a)(2) (authorizing the Attorney General to petition the Chief Justice for appointment of a three-judge district

6

expedited hearings in the case and denied the defendants' plea to the jurisdiction and MALC's application for a temporary injunction on December 22. Two weeks later, defendants appealed directly to this Court,[13] and we expedited briefing and oral argument. Beginning to end, no one in this process sat on their hands.

But neither did anyone in *Khanoyan*. There, the Harris County Commissioners' Court on October 28, 2021, ordered commissioners' precincts redrawn in response to the census report released a month earlier.[14] Plaintiffs sued on November 16, and the trial court denied their application for a temporary injunction on December 22.[15] Plaintiffs immediately sought review by this Court on petition for writ of mandamus. Thus, the timing in that case and this one is essentially identical. In *Khanoyan*, we denied relief without oral argument on January 6. "[A]ny relief that we theoretically could provide here", we explained, "would necessarily disrupt the ongoing election process."[16] That was before the primary election. Certainly the threat of disruption is even greater in the present case, now that the primary election is behind us.

---

court in a suit against the State arising from redistricting).

[13] *See id.* § 22A.006(a) ("An appeal from an appealable interlocutory order or final judgment of a special three-judge district court is to the supreme court.").

[14] 637 S.W.3d at 765.

[15] *Id.*

[16] *Id.* at 766.

7

Plaintiffs here, to their credit, have not attempted to distinguish this case from *Khanoyan* or to ask for reconsideration of the Court's ruling and analysis there. Rather, heeding *Khanoyan*, plaintiffs have abandoned their request for relief in the 2022 election cycle. As a result, their claims for relief affecting the 2022 cycle are moot, and we lack jurisdiction to address them.

## II

As already noted, the imminence of an election, alone, does not deprive the courts of jurisdiction. Indeed, in *Khanoyan*, we suggested that plaintiffs could continue to litigate their claims because the challenged map, "if it stands, will govern Harris County elections for the rest of the decade."[17] The situation in this case is different. The Texas Constitution does not require counties to reapportion commissioners' precincts at any particular time, but only "from time to time, for the convenience of the people".[18] In contrast, the Constitution commands: "The Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts . . . ."[19] The State assures us that the 88th Legislature will discharge that obligation in its regular session in early 2023, well before the 2024 election cycle. Plaintiffs respond that the State's counsel, the Attorney General, cannot bind the Legislature; that in fact, the Legislature failed to meet its regular session redistricting responsibility in 1970, 1980, and 2000; and thus

---

[17] *Id.* at 770.

[18] TEX. CONST. art. V, § 18(a).

[19] *Id.* art. III, § 28.

redistricting in 2023 is speculative. But the Constitution expressly recognizes that the Legislature may "fail to make such apportionment" and in that event directs the Legislative Redistricting Board to act.[20] Plaintiffs do not assert that the Board has ever failed to act. Board inaction is not an option because "[t]he Supreme Court of Texas [has] jurisdiction to compel such Board to perform its duties".[21] Plaintiffs say not a word about the Board's responsibility to act if the Legislature does not, this Court's power to compel the Board to act, or judicial review of its action. The Constitution's fail-safe process makes certain that redistricting will occur before the 2024 election.

The possibility remains that 2023 redistricting will not moot plaintiffs' county-line claim. The Legislature or the Board could adopt the same maps at issue here. Plaintiffs argue that the district court therefore retains jurisdiction "to declare the [present] maps unconstitutional and then consider the propriety of permanent injunctive relief" in order to prevent that possibility. But the Uniform Declaratory Judgments Act is "merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions."[22] The Court cannot declare unconstitutional past legislation that can never have effect or future legislation that may never be

---

[20] *Id.*

[21] *Id.*

[22] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

9

enacted. Nor can enforcement of future legislation be enjoined just in case it is enacted.

As this Court has noted,

> [P]redictions about the probable course of the legislative process are notoriously unreliable, as anyone remotely familiar with the process well knows . . . . [C]ourts should not encourage parties to predict, much less prove the improbability of, legislative inaction on the important matter of redistricting. Every encouragement, at least from the judiciary, should be toward adoption of a legislative solution.[23]

Further, "[t]he members of the legislature are sworn to support the constitution, and the courts will not presume that they have intended to violate it".[24] The Legislature is not merely entitled to the benefit of the doubt that further redistricting will meet all constitutional requirements. It has the right by Separation of Powers to make the first determination.

### III

Today's advisory opinion is premature, as is further action by the district court to declare and enjoin hypothetical legislation that may never happen. Plaintiffs' claims for relief affecting the 2024 election cycle are simply not ripe for decision. Though there is a real controversy between plaintiffs and the State, the controversy is one for the Legislature to resolve in the first instance. There is no real chance that today's decision will ever affect an election. It does not affect the 2022 election, and it is highly unlikely it will affect the 2024 election. We

---

[23] *Perry v. Del Rio*, 66 S.W.3d 239, 255 (Tex. 2001).

[24] *Pickle v. Finley*, 44 S.W. 480, 481 (Tex. 1898).

explained years ago that ripeness is "peculiarly a question of timing."[25] The question is "whether a dispute has yet matured to a point that warrants decision. The central concern is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."[26] That completely describes this case in its current posture.

The Court should order the case dismissed for want of jurisdiction. Because it does not, I respectfully dissent.

Nathan L. Hecht
Chief Justice

**OPINION FILED:** June 24, 2022

---

[25] *Del Rio*, 66 S.W.3d at 249 (quoting *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)).

[26] *Id.* (quoting 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3532 (2001 Supp.)).