NO. 07-05-0325-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 13, 2006


 ______________________________



CITY OF AMARILLO, APPELLANT



V.



RON DYER AND JO DYER, APPELLEES


_________________________________



FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;



NO. 55,785-C; HONORABLE PATRICK A. PIRTLE, JUDGE


_______________________________




Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 The City of Amarillo brings this interlocutory appeal challenging the denial of its plea
to the jurisdiction in a suit against it for inverse condemnation. We affirm the trial court's
order.

 The plaintiffs in the trial court are Ron and Jo Dyer. Their petition alleges they live
on a tract of about 70 acres near a waste water treatment facility operated by the City. 
They filed suit against the City, alleging operation of the City's facility had contaminated the
groundwater they use for household and agricultural purposes. Their petition asserts the
contamination constituted a taking by the City and seeks recovery of damages. See Tex.
Const. Art. I, § 17. The City's answer included a plea to the jurisdiction asserting the
plaintiffs' claims were not ripe because they "can prove no damages that are ripe for
adjudication . . . ." The answer also asserted alternative affirmative defenses, including
limitations. 

 At a hearing on the City's plea to the jurisdiction, Ron Dyer testified over the City's
objection that the level of chlorides in the water has been increasing, which affected the
taste of the water and reduced the value of the property. He also asserted they would be
required to disclose the water condition to any potential buyer. The Dyers presented the
testimony, also over the City's objection, of a real estate appraiser that the level of
chlorides would reduce the value of the property by fifty percent. The trial court overruled
the challenge to its jurisdiction by written order. It made findings of fact and conclusions
of law in support of its order. The City timely perfected appeal from that interlocutory order. 
See Tex. Civ. Prac. & Rem. Code Ann. §51.014(a)(8) (Vernon Supp. 2005). The City now
presents three issues challenging the trial court's order. 

 A plea to the jurisdiction seeks to defeat a cause of action without regard to whether
the claims have merit. Bland I.S.D. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). A court lacks
subject matter jurisdiction over a claim which depends on contingent or uncertain future
events. Patterson v. Planned Parenthood, 971 S.W.2d 439, 443 (Tex. 1998). The
question of ripeness "asks whether the facts have developed sufficiently so that an injury
has occurred or is likely to occur, rather than being contingent or remote." Id. at 442. If
the facts are not so developed, a claim is not ripe and any judgment rendered on the claim
would be an advisory opinion which Texas courts may not give. Id. Subject matter
jurisdiction is ordinarily determined in the first instance by examining the allegations in the
plaintiff's petition but a court is not limited to the allegations in the petition. It may consider
evidence and must do so when necessary to resolve the jurisdictional issues raised. 
Bland, 34 S.W.3d at 555. Because subject matter jurisdiction is a question of law, we
review the trial court's order de novo. Texas Natural Resource Conservation Com'n v.
IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). 

 In its first issue, the City argues the trial court erred in admitting testimony from Ron
Dyer and the appraiser at the hearing, in conflict with the Dyers' responses to the City's
requests for admissions. In support of its position the challenged evidence should have
been excluded, the City cites Marshall v. Vice, 767 S.W.2d 699 (Tex. 1989). Marshall
applied the rule that a party may not, over objection, introduce testimony controverting an
express or deemed admission. See Tex. R. Civ. P. 198.2(c), 198.3 (matter admitted
pursuant to request for admission is conclusively established). We initially note that
Marshall involved an appeal from a trial on the merits rather than denial of a plea to the
jurisdiction. Assuming, arguendo, the rule applied in Marshall is equally applicable to
evidence introduced at a hearing on a plea to the court's jurisdiction, a question we do not
decide, the City's contention nonetheless lacks merit because it is not supported by the
record. The City asserts that evidence to which it objected conflicted with the Dyers'
admission they had no scientific evidence the groundwater was contaminated. But the
record reflects no such admission by the Dyers. In response to the City's request, (1) the
Dyers neither admitted nor denied the requested fact. See Tex. R. Civ. P. 198.2(b)
(prescribing content of responses to requests for admissions). 

 The City similarly asserts the trial court improperly allowed testimony conflicting with
the Dyers' admissions that they had no evidence the City contaminated their groundwater
and that their suit has not specified how their groundwater has been contaminated. Here
again, the record reflects the Dyers neither admitted nor denied the requests the City cites. 
Admission of testimony concerning the subjects of those requests did not violate the rule
applied in Marshall. 

 The City further contends the court should not have allowed the appraiser to testify 
because the Dyers had admitted they did not have a professional appraisal of their
property made since November 2004. The Dyers' response admitting that fact did not
have the effect of precluding them from obtaining an appraisal or from introducing evidence
of the appraiser's opinion at the hearing. See Tex. R. Civ. P. 198.3 (prescribing effects of
admissions). The City does not argue the testimony should have been excluded due to
the Dyers' failure to supplement their discovery response. See Tex. R. Civ. P. 193.5. 
When determining its jurisdiction in the face of a ripeness contention, the court is not
limited to facts frozen at the moment the petition is filed. Perry v. Del Rio, 66 S.W.3d 239,
251 (Tex. 2001). We overrule the City's first issue.


 The City's second issue assigns error to the denial of its plea to the jurisdiction
because the Dyers failed to establish that their claim is ripe. It argues the Dyers have
presented insufficient evidence to "overcome [the City's] proof" that the claim is not ripe
because they have suffered no injury. 

 The City relies primarily on Patterson, 971 S.W.2d 439. The supreme court found
in that case that Planned Parenthood was seeking adjudication of issues based on the
effect of anticipated governmental actions when the evidence showed the agencies
involved had not yet decided on a course of action. The court said, "We simply do not
know what the federal government will do if the state carries out its plan to segregate the
funds, and the record does not even demonstrate what exactly the state will do. Without
knowing what the federal government will do, Planned Parenthood cannot show a conflict
between federal and state demands or that the state's proposed action will cause it any
injury." 971 S.W.2d at 444. Concluding that Planned Parenthood's alleged injury therefore
remained contingent, the court found its claim not yet ripe. Id. By contrast, the Dyers'
pleadings allege that the City's operation of its waste treatment facility has caused
contamination of their underground water supply. The Dyers may or may not be able to
prove their allegations, but there is nothing contingent about the injuries they claim. Said
another way, the determination whether the Dyers have a concrete injury for which the City
is liable does not depend on "contingent or hypothetical facts, or upon events that have not
yet come to pass." Id. at 443. We overrule the City's second issue.


 The City's third and final issue recasts the same question by alleging denial of its
plea to the jurisdiction was error because the Dyers failed to present evidence they have
suffered any damages. We overrule the issue. As the supreme court instructed in Bland,
a plea to the jurisdiction "should be decided without delving into the merits of the case." 
34 S.W.3d at 554. This is so because "the proper function of a dilatory plea does not
authorize an inquiry so far into the substance of the claims presented that plaintiffs are
required to put on their case simply to establish jurisdiction." Id. The City's challenge to
the Dyers' evidence of their damages is misplaced at this stage of the proceeding. 

 Having overruled the City's issues, we affirm the trial court's order, and remand to
that court for further proceedings.

 

 James T. Campbell

 Justice



1. The request cited by the City is its request no. 26, which states: "Plaintiffs do not
have any scientific evidence that the groundwater on the property is contaminated at this
time." The Dyers' response reads: "Plaintiffs cannot admit or deny at this time. Discovery
and testing are not complete." 


ed and passed him. 
          As for the suggestion that the “one second” in which Djuanna claims to have seen
appellant’s face being too weak to support the verdict, we note that Djuanna knew
appellant previously and was, in fact, related to him. So she was capable of recognizing
him. Furthermore, the credibility of her identification was for the jury to weigh and
determine, and we find its resolution of that matter factually sufficient to support the verdict. 
          Deadly Conduct Against Meadiol Lee
          Appellant was also charged with aggravated assault against Meadiol Lee. However,
the jury found him guilty of felony deadly conduct. Next, a person engages in such conduct
if he knowingly discharges a firearm at or in the direction of someone. Tex. Penal Code
Ann. §22.05(b)(1) (Vernon 2003). Appellant asserts that there is no evidence or insufficient
evidence showing that he knowingly shot at Meadiol. And, we again disagree.
             The record shows that 1) Meadiol overheard appellant say that he was going to
come back to the trailer house and shoot up the place, 2) later she exited her truck which
was parked at the residence, looked behind her, and saw someone start shooting, 3) she
fell to the ground and prayed that she wouldn’t be shot, 4) appellant later apologized to her
for the incident and said he wasn’t trying to hurt her but was upset, 5) she signed an
affidavit of non-prosecution at appellant’s request, and 6) the tires of her truck were shot
out as well as the front and back windows. It is true that Meadiol was unable to state that
appellant was the one who shot at her. However, given appellant’s prior threat, eyewitness
testimony that appellant was in the same area with a gun and he was seen firing it after
having looked in the direction of the trailer house, and his later apology to her for the
incident, a rational jury could have inferred, beyond reasonable doubt, both that he was the
person shooting in the direction of Meadiol and that he knowingly did so. Furthermore, that
finding would not be so against the great weight of the evidence as to be manifestly unjust.
          Deadly Conduct by Firing into House
          Finally, the jury found appellant guilty of deadly conduct by knowingly discharging 
a firearm at or in the direction of a habitation (the trailer house on Maiden Street) and was
reckless as to whether the habitation was occupied. See Tex. Penal Code Ann.
§22.05(b)(2) (Vernon 2003). Appellant believes that there was insufficient evidence to
prove that he 1) intentionally or knowingly fired several shots into the residence, and 2) was
reckless as to whether the house was occupied. We disagree. 
          The record contains evidence showing that 1) appellant had been at the house
twenty minutes earlier and knew that there were several people in the house, 2) appellant
threatened to come back and shoot up the place, 3) appellant asked someone to bring him
an “SK,” 4) one of the residents heard “a lot” of shots and the shots were “one after the
other,” 5) appellant was seen in the area around that time with a large gun, 6) appellant
was observed to have exited his car, looked at the trailer, and then fired a “long gun”
multiple times, 7) shell casings of a size to fit either an SKS rifle or an AK-47 were found
in the area where appellant was seen shooting the gun, 8) bullets were heard hitting the
house, and 9) three fresh bullet holes were found on the side of the house. The jury was
free to infer from this that appellant was reckless as to whether occupants were in the
residence and that he intentionally or knowingly fired several rounds into it. Moreover,
such inferences do not arise from weak evidence and are not overwhelmed by
contradictory evidence. 
 
          Issue 9 - Admission of Gun
          During trial, the State was allowed to introduce into evidence a replica of the gun
allegedly used by appellant during the commission of his offenses. That replica was an
SKS assault rifle which appellant argues was merely used to inflame and prejudice the jury. 
We overrule the issue.
          An object which is not an exact replica of the one used to commit an offense is
admissible as demonstrative evidence if 1) the original is unavailable, 2) the original would
be admissible if available, 3) the evidence is relevant and material to an issue in
controversy, and 4) its probative value outweighs any inflammatory affect. Simmons v.
State, 622 S.W.2d 111, 113-14 (Tex. Crim. App. 1981). And, whether the trial court erred
in admitting such demonstrative evidence depends on whether it abused its discretion. Id. 
          The rifle admitted into evidence was identified as looking similar to the gun that
appellant carried. Thereafter, the trial court instructed the jury to consider the firearm 
solely as evidence that demonstrates the appearance of the object used in the alleged
offense. Next, a firearm may be relevant to aid the jury in understanding what type of
weapon was used and in understanding a complaining witness’ testimony. Fletcher v.
State, 902 S.W.2d 165, 167 (Tex. App.–Houston [1st Dist.] 1995, pet. ref’d). Moreover, the
type of weapon used here (an assault or combat rifle) was relevant to determining the
pivotal issue of appellant’s intent. Thus, we cannot say the trial court’s decision to admit
the rifle fell outside the zone of reasonable disagreement or evinced abused discretion. 
 
 
          Issue 10 - Testimony of Jeff Case
          Appellant next complains of the admission of his oral and written statements to Jeff
Case, an investigator for the district attorney. Purportedly, both statements were the result
of a custodial interrogation. We overrule the issue. 
          According to the record, appellant came to the District Attorney’s office and
requested to speak with someone. This occurred the day after his arrest and release on
bond. Not knowing of the shooting, Case spoke with him and was told that “people were
saying he [appellant] shot at them.” When asked whether he indeed had shot at someone,
appellant replied, “only after they had shot at me first.” Thereafter, appellant left and
returned the next day with his father and brother to execute a written statement. The latter
contained the Miranda admonishments, but in executing it, appellant said nothing about
shooting a weapon. Appellant left after giving the statement. 
          Assuming arguendo that appellant’s voluntarily appearing at the District Attorney’s
office, requesting to speak with someone, engaging in a conversation with an investigator,
leaving a short time later, voluntarily reappearing the next day with kin to make another
statement, and again leaving evinced custodial interrogation (which we doubt), we find no
harm arising from receiving the statements into evidence. This is so because the
admission to Case about shooting the firearm was, for all practical purposes, no different
than an admission to shooting the rifle implicit in appellant’s apologies to his victims, offers
to recompense them, efforts to explain his conduct, and requests that they not prosecute
him. So, because like evidence which appellant does not attack appears of record, we
cannot say that he suffered any harm when the trial court allowed the jury to hear what he
told Case. 
          Issue 11 - Lesser-Included Offenses 
          Next, appellant contends that he was entitled to charges on the lesser-included
offenses of felony and misdemeanor deadly conduct with respect to the accusation of 
aggravated assault. A person can be guilty of deadly conduct by recklessly engaging in
conduct that places another in imminent danger of serious bodily injury. Tex. Penal Code
Ann. §22.05(a) (Vernon 2003). Appellant argues that the jury could have found him
reckless as to whether the vehicle driven by Djuanna was occupied. He also claims the
vehicle could have received the bullet holes during the shooting at the trailer house. And,
if the jury so concluded, he allegedly would have been entitled to the instructions. We
overrule the issue.
          To be entitled to a lesser instruction, there must be evidence of record affirmatively
negating the element present in the greater offense but absent in the lesser. Morris v.
State, No. 07-99-0498-CR, 2000 Tex. App. Lexis 7181 at *5 n.1 (Tex. App.–Amarillo
October 25, 2000, pet. ref’d) (not designated for publication). It is not enough to simply rely
on the State’s failure to prove the particular element. Id. Here, there was evidence that
Djuanna’s vehicle did not have any bullet holes in it when she left the trailer house to drive
her uncle home. She also testified that she sped up when she saw appellant parked along
the road negating any contention that the vehicle was not moving when appellant shot at
it. Yet, we find no evidence to support the contention that appellant was only reckless as
to whether the vehicle was occupied or that the car was only shot at during the shooting
incident at the trailer. Accordingly, the trial court did not err in failing to give the requested
instructions. 
          Issues 12 & 13 - Admission of Extraneous Offenses
          In conclusion, appellant complains of the admission into evidence during the
punishment phase of certain extraneous offenses. This evidence consisted of testimony
from a cell mate of appellant’s who stated that appellant had forced him to perform sexual
acts on and receive them from appellant while in prison. We overrule the issue.
          The standard of review again is one of abused discretion. Ellison v. State, 86
S.W.3d 226, 227 (Tex. Crim. App. 2002). Additionally, during the punishment phase of a
trial, the trial court may admit evidence of extraneous offenses or bad acts that are shown,
beyond a reasonable doubt, to have been committed by him or for which he could be held
criminally responsible regardless of whether he previously was charged with or finally
convicted of them. Tex. Code Crim. Proc. Ann. art. 37.07 §3(a)(1) (Vernon 2006). Next,
such evidence is highly probative of appellant’s character, see Lamb v. State, 186 S.W.3d
136, 144 (Tex. App.–Houston [1st Dist.] 2005, no pet.), and relevant in assisting the
factfinder in selecting the appropriate punishment in a particular case. Sims v. State, No.
PD-1575-07, 2008 Tex. Crim. App. Lexis 820 at *8 (Tex. Crim. App. July 2, 2008). 
          While the type of extraneous acts in question here are repulsive to some, they
nonetheless evince appellant’s character, reflect the threat that he poses to others, and
bear on the likelihood of rehabilitation. Thus, a factfinder could legitimately deem them
quite relevant in determining his sentence. And, given their probative value, we cannot say
the trial court’s decision to admit them fell outside the zone of reasonable disagreement. 
See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (specifying that
to be the test in assessing whether discretion has been abused). 
          Having overruled all of appellant’s issues, the judgments of the trial court are
affirmed. 
 
                                                                           Per Curiam


Do not publish.