IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00287-CV

 

Texas A&M University,

                                                                                    Appellant

 v.

 

Bryan Glen Hole, et al.,

                                                                                    Appellees

 

 

 



From the 272nd
District Court

Brazos County, Texas

Trial Court No. 03-000858-CV-272

 



Opinion



 

Appellant, Texas A&M
University (TAMU), brings this appeal contesting the trial court’s judgment in
favor of Appellees.  We will vacate the judgment of the trial court and dismiss
the case.

Background

      In October 2002, a student
reported hazing in the Parsons Mounted Cavalry (PMC), a unit within the
university’s Corps of Cadets.  The university initiated disciplinary action for
the misconduct in April 2003.  Before his hearing with TAMU officials,
Plaintiff Eric Gonzalez filed a petition seeking a Temporary Restraining Order (TRO)
which the trial court granted.  The trial court issued an additional TRO which
stopped all PMC-related hearings, all university appellate proceedings, and the
enforcement of any sanctions already assessed.  This order was entered before
TAMU initiated disciplinary action for some students and before any student
exhausted the university’s appellate process.

Additional students filed
suit and the actions were consolidated with the Gonzalez suit.  Eventually,
twenty-three plaintiffs sought relief from the trial court in the form of a
permanent injunction enjoining TAMU from continuing with the
student-disciplinary process and a declaration under the Uniform Declaratory
Judgments Act as to provisions of the Student Conduct Code, Student Rules, and
student-disciplinary process.  The final judgment, among other things,
permanently enjoined TAMU from enforcing the sanctions previously assessed
against the plaintiffs by the university and pursuing any disciplinary action
against the students for conduct that occurred prior to October 2002.  

      TAMU presents five issues for
review.  It first challenges the jurisdiction of the trial court.




Ripeness

      Ripeness is a threshold issue that
implicates subject-matter jurisdiction and emphasizes the need for a concrete
injury.  Patterson v. Planned Parenthood of Houston and Southeast Texas,
Inc., 971 S.W.2d 439, 442 (Tex. 1998).  Under the ripeness doctrine, we
consider whether, at the time a lawsuit is filed, the facts are
sufficiently developed “so that an injury has occurred or is likely to occur,
rather than being contingent or remote.”  Waco Indep. Sch. Dist. v.
Gibson, 22 S.W.3d 849, 851-52 (Tex. 2000) (citing Patterson, 971
S.W.2d at 442).  By
focusing on the concrete injury, the ripeness doctrine allows courts to avoid
premature adjudication, and serves the constitutional interests in prohibiting
advisory opinions.  Id.  Because the plaintiffs had not yet completed
the university’s disciplinary process, they did not have a concrete injury and
the case was not ripe for adjudication.  

      Seeking a declaration of rights
under the Uniform Declaratory Judgments Act is not sufficient to avoid the
ripeness doctrine.  This act is merely a procedural device for deciding cases
already within a court’s jurisdiction rather than a legislative enlargement of
a court’s power, permitting the rendition of advisory opinions.  Texas Ass’n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).

      Because plaintiffs’ claims were
not ripe, the trial court lacked subject-matter jurisdiction.[1] 
Patterson, 971 S.W.2d at 442.  

      Having determined that the trial
court lacked jurisdiction, we need not decide the remaining issues.

Conclusion

      For the reasons stated, we vacate the
trial court’s judgment and dismiss the case.  Tex. R. App. P. 43.2(e).

                                                                                                                                                        

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

            (Chief
Justice Gray dissenting)

Judgment
vacated; Case dismissed

Opinion
delivered and filed April 26, 2006

[CV06]









    [1]   Courts should tread lightly in
fashioning remedies for due process violations that affect the academic
decisions of state-supported universities.  Univ. of Texas Med. Sch. at Houston v. Than, 901 S.W.2d 926, 934 (Tex. 1995).








nn. § 31.03(b)(1) (Vernon Pamph. 2010).  Consent is not
effective if it is induced by deception.  Tex.
Penal Code Ann. § 31.01(3)(A) (Vernon Pamph. 2010).  Deception means:

(A) creating or confirming by words or
conduct a false impression of law or fact that is likely to affect the judgment
of another in the transaction, and that the actor does not believe to be true;

(B) failing to correct a false
impression of law or fact that is likely to affect the judgment of another in
the transaction, that the actor previously created or confirmed by words or
conduct, and that the actor does not now believe to be true;

(C) preventing another from acquiring
information likely to affect his judgment in the transaction;

(D) selling or otherwise transferring or
encumbering property without disclosing a lien, security interest, adverse
claim, or other legal impediment to the enjoyment of the property, whether the
lien, security interest, claim, or impediment is or is not valid, or is or is
not a matter of official record;  or

(E) promising performance that is likely
to affect the judgment of another in the transaction and that the actor does
not intend to perform or knows will not be performed, except that failure to
perform the promise in issue without other evidence of intent or knowledge is not
sufficient proof that the actor did not intend to perform or knew the promise
would not be performed.  

 

 Tex.
Penal Code Ann. § 31.01(1)(A)-(E) (Vernon Pamph. 2010).   

The indictment
alleged that Romei committed theft by deception in that he represented that
$7400 was needed for lighting for a firefighter statue when it was in fact for
his personal use.  Romei argues in his first issue on appeal that the evidence
is insufficient to show that the owner’s consent was induced by deception. 
Romei argues in his second issue on appeal that the evidence is insufficient to
prove intent to commit theft by deception due to Romei’s performance under the
contract. 

Romei argues
that this is a claim of theft arising out of a contract dispute that requires
proof of more than an intent to deprive the owner of property and the
subsequent appropriation of property.  Romei states that a claim in connection
with a contract requires proof of the false pretext of fraud to become criminal
conduct.  Romei cites Jacobs v. State, 230 S.W.3d 225, 230 (Tex.
App.—Houston [14th Dist] 2006, no pet.) stating that the critical distinction
between conduct that is criminal versus civil in nature is whether the record
shows deception and not merely a failure to perform.  If a contract is partially
or substantially performed, then intent to commit theft through deception is
not shown by the evidence.  Jacobs v. State, 230 S.W.3d at 231.  

Romei
represented to the City of College Station that installing lights on the statue
would cost $7400.  The estimate was based upon Romei’s experience and not that
of an electrical contractor.  Based upon Romei’s representation, the City of
College Station executed a change order for $7400 that was specifically
designated for the installation of lights on the statue.  Romei testified that
before the City of College Station transferred the money pursuant to the change
order, he knew that the electrical contractor was providing the service free of
charge and that $7400 was not needed for the lighting project.  Romei testified
that Brymer, as a representative for the City of College Station, agreed that
Romei could keep the money as a consulting fee.  Brymer testified that he and
Romei did not have any other agreement about the money and that he did not
remember having a conversation with Romei about a consulting fee.  Brymer
understood that the $7400 was spent on lighting for the statue. 

The jurors are
the exclusive judges of the facts, the credibility of the witnesses, and the
weight given to testimony.  Margraves v. State, 34 S.W.3d 912, 919 (Tex.
Crim. App. 2000).  A jury is entitled to accept one version of the facts and
reject another and to reject any part of a witness’s testimony.  See id.

There is no
dispute that the City of College Station wanted lights for the firefighter
statue and entered into a contract with Romei as executive director of the Arts
Council to obtain the lights.  There is no dispute that lights were installed
at the firefighter statue several months after the change order was entered.  Unlike
Jacobs this is not an issue of failure to perform.

 There is
sufficient evidence to show that Romei obtained $7400 from the City of College
Station by deception.  Romei represented that $7400 was necessary to install
lights for the statue; however, at the time of the transfer of the $7400, Romei
knew the money was not to be used for its designated purpose.  Romei instructed
his staff to designate the $7400 as a consulting fee and to issue Romei a
personal check from an income account rather than an expense account.  The
designation in effect concealed the transaction from the Arts Council board of
directors.  The City of College Station gave the money to the Arts Council for
the use of the Arts Council and not for Romei’s personal compensation.  The City
of College Station was unaware the money was for Romei’s personal
compensation.  We overrule Romei’s first and second issues on appeal.  

Consent

            Romei argues in his third
issue on appeal that the evidence is insufficient to show that Brymer did not consent
to Romei keeping the $7400 as a consulting fee.  Romei states in his brief that
Brymer’s inability to remember whether he authorized a consulting fee renders
the evidence legally insufficient.  

On
cross-examination, Romei’s attorney questioned Brymer extensively about his
conversation with the district attorney’s investigator.  Brymer told the
investigator that he did not remember a conversation with Romei authorizing
Romei to keep the $7400 as a consulting fee rather than its designated purpose
of lighting for the firefighter statue.  Brymer testified on direct examination
that the $7400 was to be spent for lighting and that there was no other
agreement between himself and Romei for the use of the money. 

Any changes to
the contract between the Arts Council and the City of College Station were
required to be in writing in a formal change order.  Romei did not submit a
bill for consulting services to the City of College Station, and there is no
written change order authorizing the funds for that use.  Romei contends that
he and Brymer had an oral agreement allowing him to keep the $7400 as a
consulting fee.  Brymer testified that there was no other agreement for the use
of the funds.  The jury was the sole judge of the credibility of the witnesses
and the weight to be given their testimony.  Adelman v. State, 828
S.W.2d at 421.  The jury may choose to believe or disbelieve all or any part of
any witness's testimony.  Sharp v. State, 707 S.W.2d at 614.  The
evidence is sufficient to show that Romei appropriated the money without
consent of the owners.  We overrule Romei’s third issue.

Contractual Relationship

            In his fourth issue, Romei
argues that the evidence is legally insufficient to show that he was in a
contractual relationship with the government.  Theft of property with a value
of $1500 or more but less than $20,000 is a state jail felony.  Tex. Penal Code Ann. § 31.03(e)(4)(A)
(Vernon Pamph. 2010).  The penalty range is increased to the next higher
category of offense if it is shown that the actor was in a contractual
relationship with the government at the time of the offense and the property
appropriated came into the actor’s custody, possession, or control by virtue of
the contractual relationship.  Tex.
Penal Code Ann. § 31.03(f)(2) (Vernon Pamph. 2010).  

            Romei contends that the Arts
Council and the City of College Station have a contractual relationship and
that his only relationship to those parties was his status as an employee of
the Arts Council.  Romei maintains that the contract and change order in
question were between the Arts Council and the City of College Station.  

            The Arts Council is a Texas
nonprofit corporation.  Romei served as executive director of the Arts Council.
An individual is criminally responsible for conduct that he performs in the
name of or in behalf of a corporation or association to the same extent as if
the conduct were performed in his own name or behalf.  Tex. Penal Code Ann. § 7.23(a) (Vernon 2003).  

            Romei signed funding
agreements between the Arts Council and The City of College Station on behalf
of the Arts Council.  Romei signed the change order authorizing the $7400 to
install lights on the firefighter statue on behalf of the Arts Council.  We
find the evidence is sufficient to support a finding that Romei was in a
contractual relationship with the government.  We overrule Romei’s fourth issue
on appeal.  

Cause No. 10-09-00063-CR

            Romei brings two issues on
appeal for his conviction of misapplication of fiduciary property.  Romei
argues that the evidence is legally insufficient to support his conviction and
also that his misdemeanor conviction is barred by the statute of limitations.  

Romei was
convicted of misapplication of fiduciary property in trial court Cause No.
07-04491-CRF-361.  For that cause number, the jury assessed Romei’s punishment
at a $750 fine, and the trial court imposed the sentence on January 12, 2009. 
Romei was convicted of theft in trial court Cause No. 07-04489-CRF-361.  At the
sentencing hearing, the trial court stated that for trial court Cause No.
07-04489-CRF-361, Romei would be assessed a fine of $750 and that payment was a
condition of felony community supervision.  Romei paid the fine and court costs
the day after sentencing, but prior to filing his notice of appeal. 

Mootness

The State has
filed a motion to dismiss this appeal for lack of jurisdiction because it
contends that when Romei voluntarily paid the $750 fine, the sentence was
discharged and therefore, there was nothing from which to appeal.  Upon
pronouncing sentence against Romei, the trial court stated that the payment of
the fine would be a condition of his community supervision for the felony
offense.  The trial court indicated weeks later that it was not its intent that
the fine be made a condition of his felony community supervision; however, the
oral pronouncement was clear even if it was not what the trial court
intended.    

A trial court’s
pronouncement of sentence is oral, while the judgment, including the sentence
assessed, is the written declaration and embodiment of that oral
pronouncement.  Tex. Code Crim. Proc.
Ann. art. 42.01, § 1 (West 2006); see Ex parte Madding, 70 S.W.3d
131, 135 (Tex. Crim. App. 2002).  When the court’s written judgment diverges
from the court’s oral pronouncement of sentence, the oral pronouncement
controls.  Coffey v. State, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998)
(because oral pronouncement of sentence is the appealable event, no deviations
in the written judgment can supersede the sentence pronounced in open court). 
Because the trial court’s oral pronouncement of sentence made the payment of
the fine a condition of his felony community supervision, the appeal of the
conviction is not moot.

Misapplication of Fiduciary Property[1]

Romei was
indicted for the felony offense of misappropriation of fiduciary property of
$1500 or more but less than $20,000 on August 23, 2007.  The State alleged four
separate incidents which it sought to aggregate to reach the felony amount. 
Three political contributions were made to separate individuals, each in the
amount of $250, on or about May 10, 2002.  A fourth incident was alleged for a
political contribution made on or about October 19, 2005 in the amount of
$1000.  The jury did not find Romei guilty of the aggregated felony offense but
did find him guilty of the lesser-included offense of misapplication of
fiduciary property in an amount of $500 or more but less than $1500.  Both of
Romei’s complaints about this conviction are based on his argument that the
three $250 contributions constituted one criminal act and therefore must be
considered as an aggregated total of $750, not three separate contributions of
$250.

Romei complains
in his first issue in trial court Cause No. 07-04489-CRF-361 that the evidence
was legally insufficient for the jury to have determined that there was more
than a single allegation of misapplication or one continuous scheme or course
of conduct.  Romei contends that the three $250 contributions together
constituted a single allegation because he sought reimbursement for them
jointly and that the 2005 contribution constituted a single allegation and,
because the felony offense required a continuous scheme or course of conduct,
neither could stand alone pursuant to the trial court’s charge.  Thus, he
contends that because the jury found him guilty of the misdemeanor offense and
not the felony offense, the evidence is then necessarily legally insufficient
for the jury to have found him guilty as there could not have been a
combination of misapplications or the jury would have convicted him of the
felony offense. 

Pursuant to
section 32.45 of the Penal Code, the elements for misapplication of fiduciary
property are (1) the defendant, (2) intentionally, knowingly, or recklessly,
(3) misapplies, (4) property he holds as a fiduciary or property of a financial
institution, (5) in a manner that involves substantial risk of loss, (6) to the
owner of the property or to a person for whose benefit the property is held.  Tex. Penal Code Ann. § 32.45(b) (West
2010).  Section 32.03 provides that “[w]hen amounts are obtained … pursuant to
one scheme or continuing course of conduct, whether from the same or several
sources, the conduct may be considered as one offense and the amounts
aggregated in determining the grade of offense.”  Tex. Penal Code Ann. § 32.03 (West 2010).

Section 32.03
creates a separate offense of aggregate misapplication of fiduciary property,
similar to section 31.09 which creates a separate offense for aggregate theft. 
See generally Montgomery v. State, 91 S.W.3d 426, 430 n.2 (Tex.
App.—Eastland 2002, pet. ref’d) (aggregation for fraud pursuant to section
32.03 compared with aggregation for theft pursuant to section 31.09); Dickens
v. State, 981 S.W.2d 186, 188 (Tex. Crim. App. 1998) (en banc) (aggregated
theft).

In determining whether section 31.09
creates a separate offense from each theft, the Court of Criminal Appeals held
in Dickens that “[a]ggregated theft is the sum of all of its parts.  A
part is a completed theft whose elements have all been proven.  The amount obtained
in each part may be aggregated in determining the grade of the one aggregated
offense.”  Dickens, 981 S.W.2d at 188.

Each of the four offenses alleged a
separate act of misappropriation pursuant to section 32.45, which were
presented to the jury as lesser-included offenses of the aggregated
misapplication of fiduciary property.  The charge allowed the jury to find
Romei guilty of each offense individually or by aggregating the amounts if the
jury determined that the misapplications were committed pursuant to one scheme
or continuing course of conduct in whatever total amount of the lesser offenses
of which it determined Romei was guilty.  The jury found Romei guilty of a
lesser-included offense.  

Romei contends that the jury could not
have found him guilty of the 2005 contribution and less than all of the 2002
contributions, which would have reached the aggregate amount required to
convict him of the felony.  He also contends that the 2002 contributions
constituted one misapplication only, and therefore there could be no continuous
scheme or course of conduct since the jury found him guilty of the misdemeanor
offense.  However, Romei does not challenge the legal sufficiency of the
evidence as to each offense individually, but solely as it relates to section
32.03 for purposes of aggregation.  

We find that the evidence was legally
sufficient for the jury to have determined that Romei committed each of the
offenses individually.  Romei admitted to making the 2002 contributions as well
as the $1000 reimbursement for the 2005 contribution.  The charge was a general
charge and, as more fully discussed in the harm analysis for Romei’s second
issue below, it is therefore impossible to determine which offense or
combination of offenses the jury convicted him of.  But, we cannot say that the
evidence was legally insufficient on any of the four offenses alleged.  We
overrule issue one. 

Denial of Jury Instruction on the
Statute of Limitations 

In his second
issue, Romei complains that the trial court abused its discretion by refusing
to submit an instruction to the jury on the statute of limitations.  Romei
filed a pretrial motion to dismiss pursuant to article 27.08(2) of the Code of
Criminal Procedure, arguing that the three incidents in 2002 were outside of the
statute of limitations.  Romei’s motion to dismiss was denied.  At trial, there
was testimony that the three contributions were made in 2002, as alleged in the
indictment.  There was also testimony regarding the contribution in 2005. 
Romei requested an instruction regarding the statute of limitations in the jury
charge, which the judge denied.  The jury acquitted Romei of the greater
offense, but convicted him of the lesser-included offense of misapplication of
fiduciary property of $500 or more but less than $1,500, a misdemeanor.

While Romei was
indicted within the statute of limitations for the felony offense of
misappropriation, it is undisputed that the three contributions of $250 were
made more than two years prior to Romei’s indictment, which is outside of the
statute of limitations for a misdemeanor offense.  Tex. Code Crim. Proc. Ann. art. 12.01, 12.02 (West 2003). 
However, the 2005 contribution was within the statute of limitations.

We find that the
trial court abused its discretion by refusing to instruct the jury on the
statute of limitations because there was some evidence that some of the conduct
made the basis of the indictment and jury charge occurred outside of the
applicable statute of limitations for misdemeanor offenses.  See Hamel v.
State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).  When, as here, a timely
objection is made, error in the jury charge requires reversal if the error
caused “some harm.”  See Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985) (op. on reh’g).  In making this determination, “the actual
degree of harm must be assayed in light of the entire jury charge, the state of
the evidence, including the contested issues and weight of probative evidence,
the argument of counsel and any other relevant information revealed by the
record of the trial as a whole.”  Id.  

Using this
standard, we find that the failure to include the instruction resulted in “some
harm” to Romei because although the jury charge was generally unexceptional,
the evidence and arguments proffered certainly emphasized conviction of the
2002 offenses, perhaps more strongly than of the 2005 offense.  The jury could
have determined that Romei was guilty only of the 2005 offense or it could also
have determined that Romei was guilty of two or more of the 2002 offenses or
some combination thereof.  Because we find that Romei was harmed, we sustain
this issue, and will remand this cause to the trial court for a new trial on
the offense of misapplication of fiduciary property in an amount of $500 or more
but less than $1,500.        

Conclusion

            We affirm Romei’s conviction
in Cause No. 10-09-00062-CR.  We reverse the conviction in Cause No.
10-09-00063-CR and remand that cause to the trial court for a new trial. 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Affirmed
in part, Reversed and remanded in part

Opinion
delivered and filed February 23, 2011

Do
not publish

[CR25]









[1]  We are required to
address the sufficiency of the evidence complaint because, if it is sustained,
acquittal is required, which is greater relief than a reversal and remand for a
new trial.  See Nickerson v. State, 69 S.W.3d 661, 668 (Tex. App.—Waco
2002, pet. ref'd); see also Hernandez v. State, 268 S.W.3d 176, 178
(Tex. App.—Corpus Christi 2008, no pet.).