Opinion issued April 1, 2010

                                                                        

 

 

 

 



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00684-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



RACHEL C. RAMON, CLASS REPRESENTATIVE, AND ALL OTHER
SIMILARLY SITUATED PERSONS, Appellants

 

V.

 

TEACHER RETIREMENT SYSTEM OF TEXAS, JAMES H. LEE,
ROBERT P. GAUNTT, JOHN GRAHAM, JR., AND DORY A. WILEY, Appellees

 

 



On Appeal from the 55th District Court

Harris County, Texas

Trial Court Cause No. 2009-29183

 

 



MEMORANDUM OPINION

          Rachel
Ramon, on behalf of all current and retired Texas teachers, brought a class
action against the Teacher Retirement System of Texas and TRS Board of Trustees
members James Lee, Robert Gauntt, John Graham, and Dory Wiley (collectively, TRS)
for violation of the takings clause of the Texas Constitution and breach of
fiduciary duty.  TRS filed a plea to the
jurisdiction.  The trial court granted
the plea and dismissed the suit.  On
appeal, Ramon contends that the trial court had subject matter jurisdiction
because:  (1) TRS and the Trustees
violated their constitutional duty to refrain from engaging in speculative
investments; (2) Ramon sought a declaratory judgment enjoining TRS and the
Trustees from investing in derivatives, and legislative permission is not
required to maintain a suit against a governmental unit for equitable remedies
or declaratory judgments; (3) sovereign immunity does not bar Ramon’s takings
claim; and (4) Ramon’s claims under the Fourteenth Amendment and Section
1983 establish subject-matter jurisdiction. 
Ramon additionally contends that the trial court erred by denying her
the opportunity for discovery and leave to amend her petition.

          We
hold that Ramon lacks standing to sue TRS. 
This dispute is not ripe for adjudication because Ramon and the
potential class members cannot demonstrate a concrete, particularized injury as
a result of TRS’s conduct.  We further
hold that Ramon cannot cure this jurisdictional defect by amending her petition.  We therefore affirm.

Background

Article 16, Section 67 of the Texas
Constitution requires the Texas Legislature to establish a Teacher Retirement
System to “provide benefits for persons employed in the public schools,
colleges, and universities supported wholly or partly by the state.”  Tex.
Const. art. XVI, § 67(b). 
The purpose of TRS is to administer, invest, and protect the funds of
the system in order to deliver statutorily defined benefits to TRS participants
and their beneficiaries.  Tex. Gov’t Code Ann. § 821.008
(Vernon 2004).  The TRS Board of Trustees
administers and operates the retirement system, and has “exclusive control over
all assets held in trust by the retirement system and all operations funded by
trust assets and shall administer the retirement system for the sole and
exclusive benefit of the members and participants.”  Id.
§ 825.101 (Vernon Supp. 2009). 
Article 16, Section 67 authorizes the Board of Trustees to invest the
system’s assets “in such securities as the board may consider prudent
investments,” and when making investments, the board “shall exercise the
judgment and care under the circumstances then prevailing that persons of
ordinary prudence, discretion, and intelligence exercise in the management of
their own affairs, not in regard to speculation, but in regard to the permanent
disposition of their funds, considering the probable income therefrom as well
as the probable safety of their capital.” 
Tex. Const. art. XVI,
§ 67(a)(3); see also Tex. Gov’t Code Ann. § 825.103(b)
(Vernon Supp. 2009); id.
§ 825.301.

TRS published a Pension Trust Fund
“Financial Highlight” report for the 2008 fiscal year which demonstrated a loss
representing a negative 4.5% total fund return for the year ending August 31,
2008, including a loss of $415,383,006 due to derivative investments.  According to a TRS Trust Fund Valuation
Update, completed on May 15, 2009, the trust fund’s unfunded liability
increased from $11.5 billion in August 2008 to $40.4 billion in February
2009.  Additionally, although the value
of the trust fund decreased from $104.9 billion in August 2008 to $70.6 billion
in February 2009, the value increased to $77.9 billion in April 2009.  The report also noted that “since TRS is a
defined benefit plan, the amount of a TRS retirement annuity is stable and, as
currently structured by the Legislature, does not fluctuate with market
conditions or TRS investment concerns.”

On the basis of the 2008 financial
report, Ramon, as potential class representative, sued TRS, James Lee, Robert
Gauntt, John Graham, and Dory Wiley.[1]  In her original petition, Ramon alleged that
the teachers have a monetary interest in retirement funds held in trust by TRS,
and TRS breached its fiduciary duties by “invest[ing] Plaintiffs’ monies in
risky investments including but not limited to derivatives and lost millions of
dollars of Plaintiffs’ monies and enriched themselves.”  Ramon also alleged that TRS violated Article
I, Section 17 of the Texas Constitution (a “takings” claim) and “caused damage”
to the plaintiffs.  Ramon sought class
certification, actual and consequential damages, an injunction prohibiting TRS
and the Trustees from “investing in risky and/or derivative investments,”
attorney’s fees, costs, and interest.  Ramon
also requested Rule 194 disclosures and production of “all documents, emails
and things that relate to Derivative Investment loss of $415,383,006 and Net
Depreciation in Fair Value (negative $7,992,472,030)” and all “salary and
benefits information, emails and documents indicating monies paid to TRS Board
of Trustees from 2006 to present.”

TRS and the Trustees filed a plea to
the jurisdiction in the trial court.  TRS
contended that Ramon lacks standing to bring her claims because she and the
other potential class members have no property interest in the trust fund, TRS
assets, or future benefits and Ramon cannot demonstrate a particularized
injury, such as a failure to receive benefits to which she is presently
entitled.  Additionally, Ramon’s claim
for breach of fiduciary duty, as an intentional tort, does not fall within the
limited waiver of sovereign immunity allowed by the Texas Tort Claims Act.  TRS acknowledged that a valid takings claim
under Article I, section 17 of the Texas Constitution waives sovereign
immunity, but it contended that Ramon cannot establish a valid takings claim here
because:  (1) the plaintiffs lack a
vested property interest in the fund and its assets; (2) the pleadings do not
demonstrate that TRS acted with the specific intent to take their property for
public use; (3) a decline in the net value of the trust fund’s assets does not
constitute either a physical or regulatory taking; and (4) Ramon did not allege
a “public use” of the lost funds.

In response, Ramon did not present
facts to support the elements of a traditional takings claim.  Ramon instead contended that the Trustees
violated the constitutional mandate located in Article 16, section 67(a)(3) of
the Texas Constitution to invest prudently and not engage in speculation.  According to Ramon, both the TRS Mission Statement,
which provides that TRS will prudently invest and manage the trust assets, and
the TRS Ethics Policy establish fiduciary duties and waive sovereign immunity.  Ramon sought recovery based in quantum meruit
and “a declaratory judgment enjoining [d]efendants from investing in
unnecessary risky derivatives.”  Ramon
also sought “full and complete discovery to determine how much money was
wrongfully taken” and leave to amend her pleadings, if necessary.

The trial court granted TRS’s motion
for a protective order and to stay discovery pending the resolution of the plea
to the jurisdiction.  The trial court
then granted TRS’s plea to the jurisdiction and dismissed Ramon’s suit with
prejudice.

Discussion

Standard of Review

          Sovereign
immunity from suit defeats the trial court’s subject matter jurisdiction and is
properly raised in a plea to the jurisdiction. 
Tex. Dep’t of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 225 (Tex. 2004) (citing Tex. Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.
1999)).  Because subject matter
jurisdiction is a question of law, we review de novo a trial court’s ruling on
a plea to the jurisdiction.  State v. Holland, 221 S.W.3d 639, 642
(Tex. 2007).  We construe the pleadings
liberally, considering the pleaders’ intent, to determine if the pleader
alleged facts that affirmatively demonstrate the trial court’s jurisdiction to
hear the case.  Id. at 642–43; Kerr v. Tex.
Dep’t of Transp., 45 S.W.3d 248, 250 (Tex. App.—Houston [1st Dist.] 2001, no
pet.) (“The plaintiff bears the burden of alleging facts affirmatively showing
that the trial court has subject-matter jurisdiction.”).  A court is not required to look solely to the
pleadings, but may consider evidence and must do so when necessary to resolve
the jurisdictional issue raised.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 555 (Tex. 2000).  If the pleadings
or the relevant undisputed evidence regarding jurisdictional facts affirmatively
negates the existence of jurisdiction, then the trial court may grant the plea
to the jurisdiction without allowing the plaintiffs an opportunity to amend
their pleadings.  Holland, 221 S.W.3d at 643; Miranda,
133 S.W.3d at 227.

Standing and Ripeness

          Subject
matter jurisdiction is essential for a court to decide a case, and standing is
an implicit component of subject matter jurisdiction.  Tex.
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex.
1993).  When a party lacks standing, any
opinion issued by the court is advisory “because rather than remedying an
actual or imminent harm, the judgment addresses only a hypothetical injury.”  Id.
at 444.  The standing doctrine generally
requires a real controversy between the parties which will be actually
determined by the judicial declaration sought. 
Id. at 446; Concerned Cmty. Involved Dev., Inc. v. City
of Houston, 209 S.W.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).  A plaintiff must demonstrate that he
“possesses an interest in a conflict distinct from that of the general public,
such that the defendant’s actions have caused the plaintiff some particular
injury.”  Williams v. Lara, 52 S.W.3d 171, 178–79 (Tex. 2001); Brown v. Todd, 53 S.W.3d 297, 305 (Tex.
2001) (citing Raines v. Byrd, 521
U.S. 811, 819, 117 S. Ct. 2312, 2317 (1997)). 
We do not focus solely on whether the plaintiff asserts a particular
interest, but rather we also consider whether the plaintiff alleges a distinct
injury caused by the defendant’s actions. 
White v. Robinson, 260 S.W.3d
463, 472 (Tex. App.—Houston [14th Dist.] 2008, pet. granted).  The plaintiff bears the burden to allege
facts affirmatively demonstrating that the trial court has jurisdiction.  See
Concerned Cmty., 209 S.W.3d at 670. 
Standing is never presumed and cannot be waived by the parties.  Tex.
Ass’n of Bus., 852 S.W.2d at 446.  We
determine standing at the time the plaintiff filed suit.  Id.
at 446 n.9.

          The
issue of ripeness is closely related to the standing doctrine and also
implicates a court’s subject matter jurisdiction.  Patterson
v. Planned Parenthood of Houston, 971 S.W.2d 439, 442 (Tex. 1998).  Both doctrines “emphasize[] the need for a
concrete injury for a justiciable claim to be presented.”  Id.;
Waco Indep. Sch. Dist. v. Gibson, 22
S.W.3d 849, 851 (Tex. 2000).  When
determining whether a claim is ripe, we consider whether, at the time the
plaintiff filed suit, the “facts are sufficiently developed ‘so that an injury
has occurred or is likely to occur rather than being contingent or
remote.’”  Gibson, 22 S.W.3d at 851–52 (quoting Patterson, 971 S.W.2d at 442). 
If the injury is only likely to occur, the plaintiff must demonstrate
that the injury is imminent, direct, and immediate, and not merely remote,
conjectural, or hypothetical.  Id. at 852.  The ripeness doctrine focuses on whether the
case involves “uncertain or contingent future events that may not occur as
anticipated, or indeed may not occur at all.” 
Patterson, 971 S.W.2d at
442.  A case is not ripe for adjudication
when “determining whether the plaintiff has a concrete injury depends on
contingent or hypothetical facts, or upon events that have not yet come to
pass.”  Gibson, 22 S.W.3d at 852.

In Patterson, Planned Parenthood brought a declaratory judgment action
seeking a determination that rider 14 to the 1997-1999 Department of Health
family planning appropriation was an unconstitutional violation of federal law.  971 S.W.2d at 441.  Planned Parenthood contended that, upon
implementation of rider 14, it was in immediate danger of losing federal funds,
and even if the Department of Health could successfully maintain federal
funding, Planned Parenthood would be harmed by administrative costs.  Id.
at 443–44.  The Texas Supreme Court held
that the declaratory judgment was not ripe for adjudication because the record
was unclear regarding whether the federal government would revoke federal funds
upon the legislature’s implementation of rider 14, and the Department of Health
had not yet finalized its plan and procedure for implementation.  Id.
at 444.  As a result, Planned Parenthood
could not show that a conflict existed between federal and state law or that
the state’s proposed implementation actions would cause any injury.  Id.  Planned Parenthood did not have to wait until
the federal government actually revoked its funding before challenging the
constitutionality of the rider, but “its potential injury must be more certain;
the threat must be established by something more definite.”  Id.  The “resolution of [Planned Parenthood’s
claim] depend[ed] on the occurrence of contingent future events that [might]
not occur as anticipated or [might] not occur at all.”  See id.

Similarly, in this case, Ramon
alleges only that TRS “breached the trust and caused damage to Plaintiffs” and
that its conduct “violates Texas Constitution Article I, section 17 and caused
damage to the Plaintiffs.”  Ramon
contends on appeal that TRS’ speculative investments resulted in the decline in
value of the TRS Trust Fund, and “[t]he millions of dollars intentionally lost
on derivatives must be returned either through increased contributions (from
teachers and taxpayers) or decreases in fund benefits.”  Ramon does not allege that (1) TRS has denied
retirement benefits to any teachers currently entitled to such benefits, (2)
the Texas Legislature has increased mandatory contributions to the trust fund
from teachers or the State, or (3) the Texas Legislature has decreased benefits
to teachers.

In support of her response to TRS’
plea to the jurisdiction, Ramon attached the 2009 TRS Trust Fund Valuation
Update and a letter from Gabriel, Roeder, Smith & Company (GRS), a
consulting firm, to the executive director of TRS.  Both of these documents describe a decline in
value of the trust fund assets and an increase in unfunded liability, and state
that, based on the current market trends, the trust fund will not be adequately
funded within the state-mandated thirty-year period.  The report from GRS indicates a preference
for increasing the value of the trust fund by increasing the contribution rates
to the fund.  The report also, however,
repeatedly emphasizes the effect of the global financial market on the value of
the TRS Trust Fund and states that “[w]e believe the current financial
environment is too volatile, with future expectations too uncertain, to create
a long term solution during [the 2009] legislative session.”  GRS recommended “that the current
financing/benefit arrangement be examined once a reasonable level of stability
is experienced.”  GRS reasoned:

The reason for exercising patience is that the sheer
magnitude of the movement in the markets that we have seen dwarfs any
reasonable changes in the contribution levels or benefit levels likely to be
realized at this time. . . . Given the magnitude of these
events and the current volatility in the investment markets, we recommend that
no unfunded benefit enhancements be considered by the Legislature.

 

The TRS Trust Fund Valuation Update
also notes that because “TRS is a defined benefit plan, the amount of a TRS
retirement annuity is stable and, as currently structured by the Legislature,
does not fluctuate with market conditions or TRS investment returns.”[2]

Although the documents relied upon by
Ramon indicate a decline in value of the trust fund, they also indicate that
this decline has not yet caused any injury to Ramon or any other teachers.  The Texas Legislature may consider increasing
contribution rates or decreasing benefits to teachers, but Ramon has not
alleged that these changes are anything more than remote, speculative, or
conjectural.  At the time Ramon filed
suit, which is the critical time period for determining whether a claim is ripe
for adjudication, the resolution of her claims depended “on the occurrence of
contingent future events that may not occur as anticipated or may not occur at
all.”  Patterson, 971 S.W.2d at 444. 
Because Ramon has not alleged a concrete, particularized injury caused
by TRS’s conduct, we hold that she lacks standing to sue TRS over its
derivative investment conduct and her claims are not yet ripe for adjudication.
 Accordingly, the trial court correctly
granted TRS’s plea to the jurisdiction.

          Ramon
also asserts that the trial court has subject-matter jurisdiction to enjoin TRS
from engaging in unnecessary risky derivative investments under the Uniform
Declaratory Judgment Act (UDJA).  A court
“within its jurisdiction has the power to declare rights, status, and other
legal relations whether or not further relief is or could be claimed.”  Tex.
Civ. Prac. & Rem. Code Ann. § 37.003(a) (Vernon 2008).  The UDJA is “merely a procedural device for
deciding cases already within a court’s jurisdiction rather than a legislative
enlargement of a court’s power, permitting the rendition of advisory
opinions.”  Tex. Ass’n of Bus., 852 S.W.2d at 444; see also City of El Paso v. Heinrich, 284 S.W.3d 366, 370 (Tex.
2009) (“The [UDJA], however, does not enlarge a trial court’s jurisdiction, and
a litigant’s request for declaratory relief does not alter a suit’s underlying
nature.”).  The Texas Supreme Court has
previously held that “the denial of injunctive relief is proper [when] there
[is] no threat of imminent harm.”  Aquaplex, Inc. v. Rancho La Valencia, Inc.,
297 S.W.3d 768, 774 (Tex. 2009); Operation
Rescue-National v. Planned Parenthood of Houston, 975 S.W.2d 546, 554 (Tex.
1998) (“A prerequisite for injunctive relief is the threat of imminent
harm.”).  Requesting an injunction under
the UDJA does not relieve Ramon of her obligation to demonstrate a threat of
imminent harm as a prerequisite for injunctive relief.  As we have discussed, however, Ramon cannot
show that TRS’s conduct has resulted in a concrete injury or that such injury
is imminent.  Thus, bringing an action to
enjoin TRS from engaging in derivative investments under the UDJA does not
establish subject-matter jurisdiction, and therefore the trial court correctly
granted TRS’s plea to the jurisdiction.

Stay of Discovery

          Ramon
further contends that the trial court erred in granting TRS’s motion to stay
discovery and in denying Ramon leave to amend her pleadings.  A trial court has broad discretion to
schedule and define the scope of discovery. 
In re Alford Chevrolet-Geo,
997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding).  The Texas Supreme Court noted in Miranda that “Rule 120a [governing
special appearances] allows the trial court to order a continuance and allow
time for discovery if the development of the case requires it.  Nothing prevents a trial court from doing the
same with a plea to the jurisdiction where evidence is necessary.”  133 S.W.3d at 229.  When determination of subject matter
jurisdiction requires the examination of evidence, the trial court has
discretion to decide whether “the jurisdictional determination should be made
at a preliminary hearing or await a fuller development of the case, mindful
that this determination must be made as soon as practicable.”  Id.
at 227 (citing Bland Indep. Sch. Dist.,
34 S.W.3d at 554).  If the evidence
regarding the jurisdictional question raises a fact issue, the fact-finder
should resolve the question; otherwise, the trial court may rule on the plea to
the jurisdiction as a matter of law.  Id. at 227–28.  Here, the evidence Ramon attached to her
response to the plea to the jurisdiction, the 2009 Valuation Update and the
letter from GRS, establishes that, at the time of filing suit, Ramon and the
other class members had not yet suffered a concrete injury.  Because this jurisdictional defect is
incurable, the trial court did not abuse its discretion by staying discovery
and denying Ramon leave to amend her petition.

Conclusion

Ramon’s pleadings and evidence
presented in response to TRS’s plea to the jurisdiction establish that Ramon
and the potential class members have not alleged a concrete, particular injury
as a result of TRS’s engagement in derivative investments.  We hold that Ramon lacks standing to sue because
her claims are not ripe for adjudication. 
We therefore affirm the order of the trial court.

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland.











[1] Lee is a former member of the TRS Board of Trustees;
Gauntt is a current member; Graham and Wiley’s terms as trustees expired in
August 2009.





[2] The Texas Legislature sets the terms of the
annuity:  “[T]he standard service
retirement annuity is an amount computed on the basis of the member’s average
annual compensation for the five years of service, whether or not consecutive,
in which the member received the highest annual compensation, times 2.3 percent
for each year of service credit in the retirement system.”  Tex.
Gov’t Code Ann. § 824.203 (Vernon Supp. 2009).